**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| SHARON HALL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 08-1038 HHK |
| | ) | |
| EMC CORPORATION, et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MOTION TO DISMISS**

Defendants, EMC Corporation, EMC2 and EMC Worldwide[1] (collective referred to as "EMC"), by counsel and pursuant to Rules 12(b)(3), 12(b)(6) and 12(e) of the Federal Rules of Civil Procedure, hereby moves to dismiss this case. Plaintiff, Ms. Hall should never have filed this action in this Court. To begin, Ms. Hall signed an Employment Agreement that contains an enforceable mandatory arbitration provision that covers the claims at issue in this case. However, before a Court can compel the matter to arbitration, it must have jurisdiction over the matter. This Court lacks jurisdiction over Plaintiff's Title VII discrimination claims because venue is improper. Finally, Defendant cannot reasonably respond to the vague and non-existent allegations in Plaintiff's Complaint. Further reasons in support of this Motion are contained in the attached Statement of Points and Authorities.

WHEREFORE, EMC respectfully requests that the Court grant this Motion and enter the attached Order dismissing Plaintiff's Complaint, or in the alternative, transfer the case to United

---

[1] EMC2 and EMC Worldwide are not separate legal entities. EMC Corporation is a legal entity and was the employer of Ms. Hall.

States District Court for the District of Maryland, compel arbitration and order Plaintiff to provide a more definite statement.

Date: July 14, 2008

                                        Respectfully Submitted,


                                            /s/
                                        _____
                                        Suzzanne W. Decker, (Bar No. 445301)
                                        Miles & Stockbridge P.C.
                                        10 Light Street
                                        Baltimore, MD 21202




## CERTIFICATE OF SERVICE

I hereby certify that on July 14, 2008, a true copy of the foregoing was served by certified mail, return receipt on:

            Sharon Hall, *pro se*
            2502 Timber Crest Drive
            Forestville, Maryland  20747
            **(Certified Mail No. 7005 1820 0002 2303 9082)**


                                            /s/
                                        _____
                                        Suzzanne W. Decker, (Bar No. 445301)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| SHARON HALL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 08-1038 HHK |
| | ) | |
| EMC CORPORATION, et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**STATEMENT OF POINTS AND AUTHORITIES**

Defendants, EMC Corporation, EMC2 and EMC Worldwide[1] (collective referred to as "EMC"), by counsel, respectfully submit this Statement of Points and Authorities pursuant to Rules 12(b)(3), 12(b)(6) and 12(e) of the Federal Rules of Civil Procedure and in support of its Motion to Dismiss.

**INTRODUCTION**

Ms. Hall should not have brought her claims of discrimination to this forum.  Pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-16. (1982), Plaintiff's ("Ms. Hall") claims arise out of and relate to the June 30, 2005, Key Employee Agreement between Plaintiff and EMC, which contains a provision for binding arbitration as the "sole and exclusive remedy for resolving any legal dispute arising out of or relating to your employment by the Company."  See Key Employee Agreement (Exhibit A).  However, before the matter can be compelled to arbitration, the Court must have jurisdiction.  This Court lacks jurisdiction over Ms. Hall's claims because venue is

---

[1] EMC2 and EMC Worldwide are not separate legal entities.  EMC Corporation is a legal entity and was the employer of Ms. Hall.

improper.  Finally, Defendant cannot reasonably respond to the vague and non-existent allegations in Plaintiff's Complaint.

## BACKGROUND

**A.     Ms. Hall's Employment with EMC.**

On June 27, 2005, Plaintiff, Ms. Hall began employment with EMC as an Associate Technical Support Engineer in Rockville, Maryland.  (Philibert Aff. Exhibit B)[2] Plaintiff also resides in Forestville, Maryland. She performed her duties in the State of Maryland. Id .  Her employment records were at all times maintained in Rockville, Maryland and in Hopkinton, Massachusetts, EMC's headquarters.  Id.

On June 30, 2006, Ms. Hall resigned employment. Id.  She filed a Charge of Discrimination with the Baltimore, Maryland Field Office of the Equal Employment Opportunity Commission ("EEOC") alleging race and sex discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII").  Id.  On April 4, 2008, the EEOC dismissed her complaint and issued a right to sue, but instead of bringing her claims forward through arbitration or in the United States District Court for the District of Maryland, she brought suit in this Court.  See Right to Sue Letter attached to Complaint.

**B.     Ms. Hall's Agreement to Arbitration.**

As part of her employment, Ms. Hall signed a Key Employee Agreement (the "Agreement") with EMC, which contains a provision for the arbitration of disputes pursuant to EMC's arbitration policy ("Arbitration Policy").  The Agreement's arbitration provision states:

> You agree that binding arbitration shall be the sole and exclusive remedy for
> resolving any individual Legal Dispute (defined below) initiated either by the

---

[2] EMC has submitted an affidavit with respect to the factual predicate for proper venue.  See Artis v. Greenspan, 223 F. Supp. 2d 149, 152 (D.D.C. 2002) (court may consider materials outside of pleadings to resolve a motion to dismiss for improper venue).

> Company or by you arising out of or relating to your employment by EMC
> Corporation and/or its affiliates ("EMC" or the "Company").  "Legal Dispute"
> includes but is not limited to any claim relating to (i) compensation, (ii) the
> termination of employment, (iii) discrimination , harassment or retaliation including
> under Title VII of the Civil Rights Act, the Age Discrimination in Employment
> Act, the Older Workers Benefits Protection Act, and any other federal, state, or
> local laws, (iv) severance, (v) reinstatement, or (vi) any other employment-related
> legal claim, and attorneys' fees and costs relating to any of the above, provided,
> however, that you or the Company may file and pursue litigation in a court
> proceeding for temporary, preliminary and permanent injunctive relief, or for
> declaratory judgment.  Any damage claims related to the subject matter of such
> litigation will, however, be submitted in arbitration.  Any such arbitration shall be
> conducted pursuant to the Company's arbitration policy, as amended from time to
> time, including but not limited to procedures regarding selection of arbitrators and
> payment of fees and expenses.

See Agreement, § Arbitration (Exhibit A).  The arbitration provision is conspicuously located in

the Agreement in bold type and italics immediately above the signature block.

The Arbitration Policy which is referenced in the Agreement has been at all times available

on EMC's intranet, to which Ms. Hall had access when she was employed at EMC.  See

Arbitration Policy (Exhibit C).  Plaintiff disregarded the unambiguous arbitration provision of her

Agreement with EMC and the Arbitration Policy by filing a Complaint in this Court alleging that

EMC discriminated against her during her employment.  In contrast, EMC stands ready and willing

to arbitrate this dispute in accordance with the Agreement and Arbitration Policy.

The arbitration provision is enforceable because it is clear and unequivocally written and

is supported by valid consideration.  Ms. Hall consented to the Agreement in consideration of her

employment with EMC and its promise to provide her access to the company's confidential

information.  See Agreement and covering correspondence from EMC's Chief Executive Officer

to Ms. Hall as employee (Exhibit A).  Ms. Hall knew the binding effect of signing the

Agreement, as the covering correspondence to the Agreement emphasized that "[t]his

Agreement, when signed by you, is a binding legal agreement, so you may wish to review its terms with your legal advisor before signing it." Id.

## **ARGUMENT**

**A.     Venue is Improper in the District of Columbia.**

Title VII permits a plaintiff to bring suit:

(1) in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, (2) in the judicial district in which the employment records relevant to such practice are maintained and administered, or (3) in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice….

42 U.S.C.S. § 2000e-5(f)(3).

Ms. Hall's minimal letter-styled "Complaint" does not contain a single allegation with respect to venue.  In truth, it lacks any substantive allegations.  However, it does state that she received "a right to sue letter from the EEOC regarding sex, race[.]"  Therefore, that statement, coupled with the content of her Charge of Discrimination, make it reasonable to conclude that Ms. Hall brings the case pursuant to Title VII.  Accordingly, Title VII's venue limitations must apply.

Ms. Hall, a Maryland resident, performed her job duties for EMC in Rockville, Maryland. Her supervisors are located in Rockville, Maryland.  She even filed her EEOC charge in Maryland. Putting aside that Ms. Hall should not have brought suit in court at all because of the arbitration clause, she should have brought this action in the federal court located in the State of Maryland. Donnell v. Nat'l Guard Bureau, 568 F. Supp. 93-94 (D.D.C. 1983) (finding venue proper where a "substantial part" of allegations occurred).  Instead, she brought it in the District of Columbia, which does not fit within any of the criteria set forth in 42 U.S.C.S. § 2000e-5(f)(3).  An appropriate resolution of the matter would be to dismiss this action.  See Fed. R. Civ. P. 12(b)(3). However, it is within this Court's discretion, when the interest of justice dictates to transfer the

matter to a court where the claim should have been brought.  28 U.S.C. § 1406(2); <u>Naartex</u>

<u>Consulting Corp. v. Watt</u>, 722 F.2d 779, 789 (D.C. Cir. 1983); <u>James v. Booz Allen</u>, 227 F. Supp.

2d 16, 20 (D.D.C. 2002).  Accordingly, EMC requests that the matter be dismissed or, in the

alternative, transferred to the United States District Court for the District of Maryland.

**B.      The Federal Arbitration Act Mandates Enforcement of the Arbitration Provision.**

The Federal Arbitration Act ("FAA") governs the enforceability of arbitration agreements

where the contract involves interstate commerce.  <u>See</u> 9 U.S.C. §§1-2; <u>Maxum Foundations, Inc. v.</u>

<u>Salus Corp.</u>, 779 F.2d 974, 978 (4th Cir. 1985).  The Agreement between EMC and Ms. Hall

involves interstate commerce because EMC's headquarters is located in Massachusetts and Ms.

Hall worked in EMC's Maryland office to support the Application Xtender and the Web Xtender

products that it provides to the national marketplace.  The Agreement specifies that it is governed

by Massachusetts law, however "where an arbitration agreement falls within the purview of the

FAA, the act governs the arbitrability of the dispute in State or Federal Court." <u>Mugnano-</u>

<u>Bornstein v. Crowell</u>, 677 N.E.2d 242, 245 (Mass. App. Ct. 1997).

This Court must "determine the enforceability of the agreement [to arbitrate] and decide

whether arbitration should be compelled." <u>Nelson v. Insignia/ESG, Inc.</u>, 215 F. Supp. 2d 143,

146 (D.D.C. 2002). The Court should look at whether or not the parties entered into a valid and

enforceable arbitration agreement. <u>Nur v. K.F.C. USA, Inc.</u>, 142 F. Supp. 2d 48, 50-51 (D.D.C.

2001). Next, the Court determines whether or not the arbitration agreement encompasses the

claims raised in the complaint. <u>Id</u>.  "The proper approach to employ in reviewing the defendant's

motion to dismiss and compel arbitration is to apply the same standard of review that governs

Rule 56 motions." <u>Brown v. Dorsey & Whitney, LLP</u>, 267 F. Supp. 2d 61, 67 (D.D.C. 2003).

When viewed under such a standard, compelling arbitration is the appropriate result.

1.      The arbitration provision is valid and covers Plaintiff's claims.

The Supreme Court and the District of Columbia Circuit Court have held that the coverage of the FAA extends to employment contracts. Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 119 (2001); Cole v. Burns Int'l Security Services, 323 U.S. App. D.C. 133, 105 F.3d 1465, 1470-71 (D.C. Cir. 1997) ("We hold that section 1 of the FAA does not exclude all contracts of employment that affect commerce. . . . [a] broad exclusion of all employment contracts could have simply said 'nothing herein shall apply to contracts of employment.'").  The evidence shows that Ms. Hall entered into and signed the Agreement with EMC which includes the requirement that all disputes arising out of or relating to the Agreement be arbitrated.  Her signature on the Agreement indicates "mutuality of assent and a party is bound by the contract unless he or she can show special circumstances relieving him or her of such an obligation." Emeronye v. CACI Int'l, Inc., 141 F. Supp. 2d 82, 86 (D.D.C. 2001); Davis v. Winfield, 664 A.2d 836, 838 (D.C. 1995) (stating that "mutual assent to a contract, often referred to as a 'meeting of the minds,' is most clearly evidenced by the terms of a signed written agreement"). No such special circumstances exist in this case and the Agreement is enforceable.

Once the Court determines that the Agreement is enforceable, it must determine whether or not the specific dispute falls within the substantive scope of the arbitration agreement. Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626-28 (1985).  If the Court concludes that the matter falls within the scope of the arbitration clause, it *must* refer the matter to arbitration without reviewing the merits.  PaineWebber, Inc. v. Hartmann, 921 F.2d 507, 511 (3d. Cir. 1990) (emphasis added).

The Agreement in this case specifies that arbitration applies to "any legal dispute arising out of or relating to your employment by the Company."  Agreement, (Exhibit A).  The Supreme

Court has characterized "arising under or relating to" formulations to be "broad arbitration clauses capable of an expansive reach." Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 398 (1967) (labeling as "broad" a clause that required arbitration of "any controversy or claim arising out of or relating to this Agreement").  "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Memorial Hosp. v. Mercury Construction Corp., 460 U.S. 1, 24-25 (1983).  Indeed, as reaffirmed by the Supreme Court in Randolph v. Green Tree Financial Corp., 121 S. Ct. 513, 521 (2000), "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." Id. at 521.  Significantly, this exact arbitration provision was found enforceable by the court in Quinn v. EMC Corp., 109 F. Supp. 2d 681, 687 (S.D. Tex. 2000).  (finding EMC's arbitration provision broad enough to cover claims of discrimination under the Age Discrimination in Employment Act and a state law intentional infliction of emotional distress claim).

The arbitration clause that governs the relationship between EMC and Ms. Hall requires that all claims be submitted for arbitration.  The Plaintiff seeks to recover for injury due to alleged discrimination that occurred during her employment and the termination of that employment.  Because Plaintiff has agreed to arbitrate all claims against EMC and the laws governing the arbitration clause between the parties strongly favor arbitration, this Court should enforce the arbitration clause and compel Plaintiff to submit to arbitration.  The FAA mandates that when an issue is referable to arbitration under a written agreement, the court must stay the trial of the action pending arbitration "until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such

arbitration." 9 U.S.C. § 3.  Therefore, this Court should grant EMC's Motion under the terms of

the Agreement and Arbitration Policy and dismiss this action or in the alternative stay the action

pending arbitration.

> 2.    Alternatively, the District of Columbia Uniform Arbitration Act Mandates
> Compelling Arbitration.

Although EMC maintains that federal law applies to its Motion, the law of the District of

Columbia also favors compelling arbitration.  Woodland Limited Partnership v. Erik B. Wulff, 868

A.2d 860, 865 (D.C. App. 2005).    The D.C. Code provides that an arbitration agreement "is valid,

enforceable, and irrevocable, save upon such grounds as exist at law or in equity for the revocation

of any such contract."  D.C. Code §  16-4301 (2008).  Where such an arbitration agreement exists,

"the Court shall order the parties to proceed with arbitration."  D.C. Code § 16-4302 (2008).

As in federal law, the District of Columbia courts also interpret an arbitration clause

encompassing all controversies "arising out of or related to" the contract at issue as very broad in

its coverage.  See Meshel v. Ohev Sholom Talmud Torah, 869 A.2d 434, 462 (D.D.C. 2005)

Therefore, EMC's arbitration clause is properly interpreted to cover Ms. Hall's employment

discrimination claims under District of Columbia law as well as under federal law.

**C.    Plaintiff Must Provide A More Definite Statement.**

Pursuant to the Federal Rules, Ms. Hall should have filed a complaint that set forth "a short

and plain statement of the claim showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8

(a)(2).  The Complaint filed by Ms. Hall only states that she "received a right to sue letter from the

EEOC regarding sex, race discrimination and retaliation which led to constructive discharge in

June 2006."  She has not provided a single factual allegation regarding sex or race discrimination

or retaliation.  EMC has not been provided any information about the conduct it is accused of

committing.  EMC seeks a more definite statement from Ms. Hall so that it can reasonably prepare a response to her allegations.  Fed. R. Civ. P. 12(e).

## <u>CONCLUSION</u>

For the foregoing reasons, EMC respectfully requests that this Court grant its Motion to Dismiss, or in the alternative, order the transfer of the matter to the United States District Court for the District of Maryland, compel Plaintiff to arbitration, and to provide a more definite statement.

Date: July 14, 20008

Respectfully Submitted,

/s/
_____
Suzzanne W. Decker, (Bar No. 445301)
Miles & Stockbridge P.C.
10 Light Street
Baltimore, MD 21202

## CERTIFICATE OF SERVICE

I hereby certify that on July 14, 2008, a true copy of the foregoing was served by certified mail, return receipt on:

Sharon Hall, *pro se*
2502 Timber Crest Drive
Forestville, Maryland  20747
**(Certified Mail No. 7005 1820 0002 2303 9082)**

/s/

_____
Suzzanne W. Decker, (Bar No. 445301)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **SHARON HALL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 08-1038 HHK** |
| | ) | |
| **EMC CORPORATION, et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

# EXHIBIT A
## (MOTION TO DISMISS)



# Key Employee Agreement

Dear Employee:

We at EMC fully recognize that our success and achievement as a company depend on your contributions. An important goal of EMC is to establish a working environment which will allow you to find maximum job satisfaction while participating in our highly competitive, technological and exciting business.

The activities of EMC's employees result in a body of patentable, trade secret and confidential information which helps keep EMC on the leading edge of technology in our industry. This information benefits us all, since EMC depends on it for its continued growth and success, and its proper use and protection should be of paramount concern to us all.

In consideration of your employment by EMC and in recognition of the fact that as an employee of EMC you have access to confidential information, I ask that you please review and sign the following Key Employee Agreement (the "Agreement"). This Agreement protects both the Company and its employees from unfair competition from former employees. This Agreement, when signed by you, is a binding legal agreement, so you may wish to review its terms with your legal advisor before signing it.

Because of your access to EMC confidential information, enclosed for your review and signature is EMC's policy on insider trading, which sets forth your obligations as an EMC employee with regard to the purchase and sale of EMC securities. Also, because of EMC's commitment to maintaining an environment free from harassment, enclosed for your review and signature is EMC's policy against harassment.

If you have any questions, either your supervisor or your human resources representative would be happy to discuss them with you. Please keep one copy of the Agreement, for your records.

My sincere thanks for your cooperation.

Joseph M. Tucci
President and Chief Executive Officer

# Key Employee Agreement

In view of the highly competitive nature of the business of EMC Corporation (together with its subsidiaries, the "Company"), the need of the Company to maintain its competitive position through the protection of its goodwill, trade secrets and confidential and proprietary information, and in consideration for being provided with access to certain trade secrets and/or confidential and proprietary information in conjunction with your employment with the Company, you agree as follows:

## 1. Non-Competition

(a) For as long as you are employed by the Company, you shall devote your full time and efforts to the Company and shall not participate, directly or indirectly, in any capacity, in any business or activity that is in competition with the Company.

(b) For the twelve month period following the effective date of your termination, for any reason, from the Company, you agree not to directly or indirectly compete with the Company. For purposes of this Agreement, such competition shall include but not be limited to: (i) the provision of any services, whether as an employee, consultant, independent contractor, member of a board of directors, or in any other capacity, to any entity that is developing, producing, marketing, soliciting or selling products or services competitive with products or services being developed, produced, marketed or sold by the Company as of the effective date of your termination; and (ii) any ownership interest of greater than 1% (whether directly or indirectly or by way of stock options (vested or unvested) or otherwise) in any such entity. EMC shall not seek to enforce this section 1(b) in the state of California, and further, this section 1(b) shall apply to you only if, as of the effective date of your termination, you are in a position at the Company that is at the director level or higher. For purposes of this Agreement, "director level" includes all individuals at the Company that report directly to a vice president and/or that are identified on the Company's systems as director level.

## 2. Customer, Partner, and Vendor Confidentiality

You recognize that it is essential to the Company's success that all non-public customer, partner and vendor information be deemed to be confidential and be properly treated as a confidential trade secret. Therefore, you agree not to use or disclose any such customer, partner, vendor information except as may be necessary in the normal conduct of the Company's business for the specific customer, partner or vendor, and after the end of your employment with the Company, you will return all such materials to the Company.

## 3. Confidentiality of Company Materials

You agree that both during your employment with the Company and thereafter you will not use for your own benefit, divulge or disclose to anyone except to persons within the Company whose positions require them to know it, any information not already lawfully available to the public concerning the Company or any of its customers, partners, vendors or suppliers ("Confidential Information"), including but not limited to any products, product development, business strategy, financial information or customer, supplier or employee lists. Confidential Information also includes, without limitation, any technical data, design, pattern, formula, computer program, source code, object code, algorithm, subroutine, manual, product specification, or plan for a new, revised or existing product; any business, marketing, financial, pricing or other sales-related data; and the present or future business or products of the Company.

## 4. All Developments the Property of the Company

All confidential, proprietary or other trade secret information and all other discoveries, inventions, processes, methods and improvements, con-

ceived, developed, or otherwise made by you, alone or with others, and in any way relating to the Company's present or planned business or products, whether or not patentable or subject to copyright protection and whether or not reduced to tangible form or reduced to practice during the period of your employment with the Company ("Developments") shall be the sole property of the Company. You agree to disclose all Developments promptly, fully and in writing to the Company promptly after development of the same, and at any time upon request. You agree to, and hereby do assign to the Company all your right, title and interest throughout the world in and to all Developments. You agree that all Developments shall constitute "Works for Hire" (as such are defined under the U.S. Copyright Laws) and hereby assign to the Company all copyrights, patents and other proprietary rights you may have in any Developments without any obligation on the part of the Company to pay royalties or any other consideration to you in respect of such Developments. You agree to assist the Company (without charge, but at no cost to you) to obtain and maintain for itself such rights.

## 5. Non-Solicitation

During your employment and for the twelve month period following the effective date of your termination, for any reason, from the Company, you agree that you will not, either on your own behalf or on behalf of any person or entity, directly or indirectly: (i) recruit, solicit or induce, or attempt to recruit, solicit or induce any person who is an employee, consultant or independent contractor of the Company to terminate, alter or modify such person's employment relationship with the Company; or (ii) solicit or divert, or attempt to solicit or divert, the business of any person or entity that is either a customer or a potential customer of the Company, to which you, directly or indirectly, attempted to or did, sell or provide any service on behalf of EMC, or about which you obtained any confidential information during the one year prior to the effective date of your employment termination.

## 6. Return of Company Materials

At the time of your termination, for any reason, from the Company, you agree to return immediately to the Company all Company materials, which include but are not limited to all documents in any tangible or electronic form and all property, in your possession, custody or control relating to work done for the Company or relating to the processes and materials of the Company, as well as all materials concerning past, present and future or potential EMC clients, customers, products and/or services. Such materials include, but are not limited to, customer and/or vendor lists, customer and/or vendor prospect material, financial projections, pricing or other sales-related data, rate structures, all technical materials, presentation materials, and software owned or developed by the Company for any purpose in any form. You also agree to return to the Company all materials provided by customers of the Company and all teaching materials provided by the Company. You also agree to attend an exit interview if so requested by the Company, and to sign an acknowledgment of your obligations under this Agreement.

## 7. Miscellaneous

(a) This Agreement contains the entire agreement between you and the Company with respect to the subject matter hereof, superseding any previous oral or written agreements with the Company or any officer or representative thereof. In the event of any inconsistency between this Agreement and any other contract between you and the Company, the provisions of this Agreement shall prevail.

(b) Your obligations under this Agreement shall survive the termination of your employment with the Company regardless of the manner of or reasons for such termination, and regardless of whether such termination constitutes a breach of any other agreement you may have with the Company.

Your obligations under this Agreement shall be binding upon your heirs, assigns, executors, administrators and representatives, and the provisions of this Agreement shall inure to the benefit of and be binding on the successors and assigns of the Company.

(c) You agree that the terms of this Agreement are reasonable and properly required for the adequate protection of the Company's legitimate business interests. You agree that in the event that any of the provisions of this Agreement are determined by a court of competent jurisdiction to be contrary to any applicable statute, law, rule, or policy or for any reason unenforceable as written, then such court may modify any of such provisions so as to permit enforcement thereof to the maximum extent permissible as thus modified. Further, you agree that any finding by a court of competent jurisdiction that any provision of this Agreement is contrary to any applicable statute, law, rule or policy or for any reason unenforceable as written shall have no effect upon any other provisions and all other provisions shall remain in full force and effect.

(d) You agree that any breach of this Agreement will cause immediate and irreparable harm to the Company not compensable by monetary damages and that the Company will be entitled to obtain injunctive relief, in addition to all other relief in any court of competent jurisdiction, to enforce the terms of this Agreement, without having to prove or show any actual damage to the Company.

(e) No failure by the Company to insist upon strict compliance with any of the terms, covenants, or conditions hereof, and no delay or omission by the Company in exercising any right under this Agreement, will operate as a waiver of such terms, covenants, conditions or rights. A waiver or consent given by the Company on any one occasion is effective only in that instance and will not be construed as a bar to waiver of any right on any other occasion.

(f) You acknowledge that you have received and reviewed the attached Anti-Harassment and Insider Trading policies, and that you will abide by such policies and all other Company policies that are issued and amended from time to time by the Company in its discretion.

(g) You agree that this Agreement may be amended or modified only by written agreement of yourself and either the President and Chief Executive Officer or the General Counsel.

(h) You agree that if the Company commences an action against you, by way of claim or counterclaim and including declaratory claims, in which it is preliminarily or finally determined that you have violated any provision of this Agreement, you will reimburse the Company for all its costs, expenses and reasonable attorneys' fees incurred in such action. You agree that the appropriate venue for any action seeking declaratory or injunctive relief for violation of this Agreement is in the state and/or federal courts located in Massachusetts, and you consent to personal jurisdiction in such courts.

(i) You agree that tuition costs for which the Company has reimbursed you and tuition advancements which may have already been paid to you will be recovered in full if you voluntarily terminate employment within one year of completion of the respective course(s).

(j) This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts, without regard to the doctrine of conflicts of law. This Agreement is executed under seal.

(k) You agree that the Company and its assigns may use your name, your photograph and other reproductions of you during or after your employment in connection with the Company's business. You acknowledge that the Company will maintain data, including in an electronic form, relating to your employment and you agree that such data may be transferred, including across state and country borders, to any Company location for the Company's business use.

(l) This Agreement does not create any obligation on the Company or any other person or entity to continue your employment. Your employment is at will, meaning either the Company or you may terminate your employment at any time and for any reason or no reason at all.

## Arbitration

*You agree that binding arbitration shall be the sole and exclusive remedy for resolving any individual Legal Dispute (defined below) initiated either by the Company or by you arising out of or relating to your employment by EMC Corporation and/or its affiliates ("EMC" or the "Company"). "Legal Dispute" includes but is not limited to any claim relating to (i) compensation, (ii) the termination of employment, (iii) discrimination, harassment or retaliation including under Title VII of the Civil Rights Act, the Age Discrimination in Employment Act, the Older Workers Benefits Protection Act, and any other federal, state, or local laws, (iv) severance, (v) reinstatement, or (vi) any other employment-related legal claim, and attorneys' fees and costs relating to any of the above; provided, however, that you or the Company may file and pursue litigation in a court proceeding for temporary, preliminary and permanent injunctive relief, or for declaratory judgment. Any damage claims related to the subject matter of such litigation will, however, be submitted to arbitration. Any such arbitration shall be conducted pursuant to the Company's arbitration policy, as amended from time to time, including but not limited to procedures regarding selection of arbitrators and payment of fees and expenses.*

Agreed and Accepted:

Signature _Sharon a Hall_

Name (Printed) _Sharon a. Hall_

Date _6 -30 - 05_

EMC Corporation

By: _Ken Taalli_

Its: _____

Rev January 1, 2005

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SHARON HALL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 08-1038 HHK |
| | ) | |
| EMC CORPORATION, et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

# EXHIBIT B
### (MOTION TO DISMISS)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **SHARON HALL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 08-1038 HHK** |
| | ) | |
| **EMC CORPORATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## <u>AFFIDAVIT</u>

I, Jean Philibert state as follows:

1. My name is Jean Philibert. I am over the age of 18 years and I am competent to make this Affidavit. Based upon my role and responsibilities and my review of EMC records kept in the normal course of business, the following facts are true and correct to the best of my knowledge.

2. I am the Sr. Director, Human Resources for EMC Corporation ("EMC").

3. On June 27, 2005, Plaintiff, Ms. Hall began employment with EMC as an Associate Technical Support Engineer in Rockville, Maryland.

4. She performed her duties in the State of Maryland.

5. Ms. Hall's employment records were maintained in Rockville, Maryland and in Hopkinton, Massachusetts, EMC's headquarters.

6. On June 30, 2006, Ms. Hall resigned employment.

7. Ms. Hall filed a Charge of Discrimination with the Baltimore, Maryland Field Office of the Equal Employment Opportunity Commission alleging race and sex

discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended.

8. As part of her employment, Ms. Hall signed a Key Employee Agreement ("Agreement") with EMC. A true and accurate copy of that Agreement is attached as Attachment 1 to this Affidavit.

9. EMC has an arbitration policy ("Arbitration Policy"). The Arbitration Policy which is referenced in the Agreement has been at all times available on EMC's intranet, to which Ms. Hall had access when she was employed at EMC. A true and accurate copy of the Arbitration Policy is attached as Attachment 2 to this Affidavit.

I solemnly affirm under the penalties of perjury that to the best of my knowledge, the contents of the foregoing paper are true.

Jean Philibert                                    7/11/2005

                                                  Date

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **SHARON HALL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 08-1038 HHK** |
| | ) | |
| **EMC CORPORATION, et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

# EXHIBIT 1

**To Jean Philibert's Affidavit**

**MOTION TO DISMISS**



# Key Employee Agreement

Dear Employee:

We at EMC fully recognize that our success and achievement as a company depend on your contributions. An important goal of EMC is to establish a working environment which will allow you to find maximum job satisfaction while participating in our highly competitive, technological and exciting business.

The activities of EMC's employees result in a body of patentable, trade secret and confidential information which helps keep EMC on the leading edge of technology in our industry. This information benefits us all, since EMC depends on it for its continued growth and success, and its proper use and protection should be of paramount concern to us all.

In consideration of your employment by EMC and in recognition of the fact that as an employee of EMC you have access to confidential information, I ask that you please review and sign the following Key Employee Agreement (the "Agreement"). This Agreement protects both the Company and its employees from unfair competition from former employees. This Agreement, when signed by you, is a binding legal agreement, so you may wish to review its terms with your legal advisor before signing it.

Because of your access to EMC confidential information, enclosed for your review and signature is EMC's policy on insider trading, which sets forth your obligations as an EMC employee with regard to the purchase and sale of EMC securities. Also, because of EMC's commitment to maintaining an environment free from harassment, enclosed for your review and signature is EMC's policy against harassment.

If you have any questions, either your supervisor or your human resources representative would be happy to discuss them with you. Please keep one copy of the Agreement, for your records.

My sincere thanks for your cooperation.

Joseph M. Tucci
President and Chief Executive Officer

# Key Employee Agreement

In view of the highly competitive nature of the business of EMC Corporation (together with its subsidiaries, the "Company"), the need of the Company to maintain its competitive position through the protection of its goodwill, trade secrets and confidential and proprietary information, and in consideration for being provided with access to certain trade secrets and/or confidential and proprietary information in conjunction with your employment with the Company, you agree as follows:

## 1. Non-Competition

(a) For as long as you are employed by the Company, you shall devote your full time and efforts to the Company and shall not participate, directly or indirectly, in any capacity, in any business or activity that is in competition with the Company.

(b) For the twelve month period following the effective date of your termination, for any reason, from the Company, you agree not to directly or indirectly compete with the Company. For purposes of this Agreement, such competition shall include but not be limited to: (i) the provision of any services, whether as an employee, consultant, independent contractor, member of a board of directors, or in any other capacity, to any entity that is developing, producing, marketing, soliciting or selling products or services competitive with products or services being developed, produced, marketed or sold by the Company as of the effective date of your termination; and (ii) any ownership interest of greater than 1% (whether directly or indirectly or by way of stock options (vested or unvested) or otherwise) in any such entity. EMC shall not seek to enforce this section 1(b) in the state of California, and further, this section 1(b) shall apply to you only if, as of the effective date of your termination, you are in a position at the Company that is at the director level or higher. For purposes of this Agreement, "director level" includes all individuals at the Company that report directly to a vice president and/or that are identified on the Company's systems as director level.

## 2. Customer, Partner, and Vendor Confidentiality

You recognize that it is essential to the Company's success that all non-public customer, partner and vendor information be deemed to be confidential and be properly treated as a confidential trade secret. Therefore, you agree not to use or disclose any such customer, partner, vendor information except as may be necessary in the normal conduct of the Company's business for the specific customer, partner or vendor, and after the end of your employment with the Company, you will return all such materials to the Company.

## 3. Confidentiality of Company Materials

You agree that both during your employment with the Company and thereafter you will not use for your own benefit, divulge or disclose to anyone except to persons within the Company whose positions require them to know it, any information not already lawfully available to the public concerning the Company or any of its customers, partners, vendors or suppliers ("Confidential Information"), including but not limited to any products, product development, business strategy, financial information or customer, supplier or employee lists. Confidential Information also includes, without limitation, any technical data, design, pattern, formula, computer program, source code, object code, algorithm, subroutine, manual, product specification, or plan for a new, revised or existing product; any business, marketing, financial, pricing or other sales-related data; and the present or future business or products of the Company.

## 4. All Developments the Property of the Company

All confidential, proprietary or other trade secret information and all other discoveries, inventions, processes, methods and improvements, con-

ceived, developed, or otherwise made by you, alone or with others, and in any way relating to the Company's present or planned business or products, whether or not patentable or subject to copyright protection and whether or not reduced to tangible form or reduced to practice during the period of your employment with the Company ("Developments") shall be the sole property of the Company. You agree to disclose all Developments promptly, fully and in writing to the Company promptly after development of the same, and at any time upon request. You agree to, and hereby do assign to the Company all your right, title and interest throughout the world in and to all Developments. You agree that all Developments shall constitute "Works for Hire" (as such are defined under the U.S. Copyright Laws) and hereby assign to the Company all copyrights, patents and other proprietary rights you may have in any Developments without any obligation on the part of the Company to pay royalties or any other consideration to you in respect of such Developments. You agree to assist the Company (without charge, but at no cost to you) to obtain and maintain for itself such rights.

## 5. Non-Solicitation

During your employment and for the twelve month period following the effective date of your termination, for any reason, from the Company, you agree that you will not, either on your own behalf or on behalf of any person or entity, directly or indirectly: (i) recruit, solicit or induce, or attempt to recruit, solicit or induce any person who is an employee, consultant or independent contractor of the Company to terminate, alter or modify such person's employment relationship with the Company; or (ii) solicit or divert, or attempt to solicit or divert, the business of any person or entity that is either a customer or a potential customer of the Company, to which you, directly or indirectly, attempted to or did, sell or provide any service on behalf of EMC, or about which you obtained any confidential information during the one year prior to the effective date of your employment termination.

## 6. Return of Company Materials

At the time of your termination, for any reason, from the Company, you agree to return immediately to the Company all Company materials, which include but are not limited to all documents in any tangible or electronic form and all property, in your possession, custody or control relating to work done for the Company or relating to the processes and materials of the Company, as well as all materials concerning past, present and future or potential EMC clients, customers, products and/or services. Such materials include, but are not limited to, customer and/or vendor lists, customer and/or vendor prospect material, financial projections, pricing or other sales-related data , rate structures, all technical materials, presentation materials, and software owned or developed by the Company for any purpose in any form. You also agree to return to the Company all materials provided by customers of the Company and all teaching materials provided by the Company. You also agree to attend an exit interview if so requested by the Company, and to sign an acknowledgment of your obligations under this Agreement.

## 7. Miscellaneous

(a) This Agreement contains the entire agreement between you and the Company with respect to the subject matter hereof, superseding any previous oral or written agreements with the Company or any officer or representative thereof. In the event of any inconsistency between this Agreement and any other contract between you and the Company, the provisions of this Agreement shall prevail.

(b) Your obligations under this Agreement shall survive the termination of your employment with the Company regardless of the manner of or reasons for such termination, and regardless of whether such termination constitutes a breach of any other agreement you may have with the Company.

Your obligations under this Agreement shall be binding upon your heirs, assigns, executors, administrators and representatives, and the provisions of this Agreement shall inure to the benefit of and be binding on the successors and assigns of the Company.

(c) You agree that the terms of this Agreement are reasonable and properly required for the adequate protection of the Company's legitimate business interests. You agree that in the event that any of the provisions of this Agreement are determined by a court of competent jurisdiction to be contrary to any applicable statute, law, rule, or policy or for any reason unenforceable as written, then such court may modify any of such provisions so as to permit enforcement thereof to the maximum extent permissible as thus modified. Further, you agree that any finding by a court of competent jurisdiction that any provision of this Agreement is contrary to any applicable statute, law, rule or policy or for any reason unenforceable as written shall have no effect upon any other provisions and all other provisions shall remain in full force and effect.

(d) You agree that any breach of this Agreement will cause immediate and irreparable harm to the Company not compensable by monetary damages and that the Company will be entitled to obtain injunctive relief, in addition to all other relief in any court of competent jurisdiction, to enforce the terms of this Agreement, without having to prove or show any actual damage to the Company.

(e) No failure by the Company to insist upon strict compliance with any of the terms, covenants, or conditions hereof, and no delay or omission by the Company in exercising any right under this Agreement, will operate as a waiver of such terms, covenants, conditions or rights. A waiver or consent given by the Company on any one occasion is effective only in that instance and will not be construed as a bar to or waiver of any right on any other occasion.

(f) You acknowledge that you have received and reviewed the attached Anti-Harassment and Insider Trading policies, and that you will abide by such policies and all other Company policies that are issued and amended from time to time by the Company in its discretion.

(g) You agree that this Agreement may be amended or modified only by written agreement of yourself and either the President and Chief Executive Officer or the General Counsel.

(h) You agree that if the Company commences an action against you, by way of claim or counterclaim and including declaratory claims, in which it is preliminarily or finally determined that you have violated any provision of this Agreement, you will reimburse the Company for all its costs, expenses and reasonable attorneys' fees incurred in such action. You agree that the appropriate venue for any action seeking declaratory or injunctive relief for violation of this Agreement is in the state and/or federal courts located in Massachusetts, and you consent to personal jurisdiction in such courts.

(i) You agree that tuition costs for which the Company has reimbursed you and tuition advancements which may have already been paid to you will be recovered in full if you voluntarily terminate employment within one year of completion of the respective course(s).

(j) This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts, without regard to the doctrine of conflicts of law. This Agreement is executed under seal.

(k) You agree that the Company and its assigns may use your name, your photograph and other reproductions of you during or after your employment in connection with the Company's business. You acknowledge that the Company will maintain data, including in an electronic form, relating to your employment and you agree that such data may be transferred, including across state and country borders, to any Company location for the Company's business use.

(l) This Agreement does not create any obligation on the Company or any other person or entity to continue your employment. Your employment is at will, meaning either the Company or you may terminate your employment at any time and for any reason or no reason at all.

## Arbitration

*You agree that binding arbitration shall be the sole and exclusive remedy for resolving any individual Legal Dispute (defined below) initiated either by the Company or by you arising out of or relating to your employment by EMC Corporation and/or its affiliates ("EMC" or the "Company"). "Legal Dispute" includes but is not limited to any claim relating to (i) compensation, (ii) the termination of employment, (iii) discrimination, harassment or retaliation including under Title VII of the Civil Rights Act, the Age Discrimination in Employment Act, the Older Workers Benefits Protection Act, and any other federal, state, or local laws, (iv) severance, (v) reinstatement, or (vi) any other employment-related legal claim, and attorneys' fees and costs relating to any of the above; provided, however, that you or the Company may file and pursue litigation in a court proceeding for temporary, preliminary and permanent injunctive relief, or for declaratory judgment. Any damage claims related to the subject matter of such litigation will, however, be submitted to arbitration. Any such arbitration shall be conducted pursuant to the Company's arbitration policy, as amended from time to time, including but not limited to procedures regarding selection of arbitrators and payment of fees and expenses.*

*Agreed and Accepted:*

Signature _____ *Sharon A Hall* _____

Name (Printed) _____ *Sharon A. Hall* _____

Date _____ 6-30-05 _____

EMC Corporation

By: _____ *Ken Taale* _____

Its: _____

Rev January 1, 2005

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **SHARON HALL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 08-1038 HHK** |
| | ) | |
| **EMC CORPORATION, et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

# EXHIBIT 2

**To Jean Philibert's Affidavit**

**MOTION TO DISMISS**

LEGAL-115: Corporate - Arbitration Policy

Page 1 of 1

 

## Channel EMC
YOUR LINK TO EVERYTHING EMC

My Profile    Manager Toolbox    EMC News    Policies    Benefits/Pay    Stock    Employment    Emplo

## Legal Policies and Procedures

**CORPORATE**

**POLICY #:** LEGAL-115
**TITLE:** Arbitration Policy
**OWNER:** Office of the General Counsel
**LAST REVIEW:** December 2004

This Policy amends the prior arbitration policy and supersedes anything in the Key Employee Agreement which is not consist

Binding arbitration shall be the sole and exclusive remedy for resolving any individual Legal Dispute (defined below) initiated relating to an employee's employment by **EMC Corporation and/or its affiliates ("EMC" or the "Company"). "Legal Dispu** compensation, (ii) the termination of employment, (iii) discrimination, harassment or retaliation including under Title VII of the the Older Workers Benefits Protection Act, and any other federal, state, or local laws, (iv) severance, (v) reinstatement, or (vi) fees and costs relating to any of the above; provided, however, that the Employee or the Company may file and pursue litigat permanent injunctive relief. Any damage claims related to the subject matter of such litigation will, however, be submitted to a

A.  **Written Notification of Dispute.** If the claim is initiated by an Employee, the Employee must notify the Office of the G Dispute ("Written Notification") within the applicable statute of limitations period or the Employee will be forever barred Company, the Company must similarly notify the Employee at his or her last known address within the applicable stat Written Notification must include (i) a description of the Legal Dispute; and (ii) the remedy sought, including any claim

B.  **Informal Resolution.** Both EMC and the Employee shall try in good faith to settle the Legal Dispute within thirty (30) Legal Dispute is not finally resolved within such thirty (30) days, the Legal Dispute shall be submitted to arbitration pro shall not bar an application for injunctive relief prior to the end of such 30-day period.

C.  **Initiation of Arbitration.** The Employee or EMC shall initiate arbitration proceedings by submitting a written request f Employee, as applicable ("Initiation of Arbitration"). Within thirty (30) days after the Initiation of Arbitration, EMC or the with the other.

D.  **Locale of Arbitration.** The arbitration will take place in the county which was the employee's principal place of emplo the employee involved is an exempt level employee and the primary action(s) complained of occurred in Massachuse Massachusetts, in which case the arbitration would take place in Massachusetts unless the parties agree to another l location.

E.  **Selection of Arbitrator.** The Legal Dispute shall be heard by one (1) arbitrator chosen by mutual agreement, and onl professional dispute resolution group will be eligible for consideration. However, if the parties fail to timely agree, or at heard by a neutral arbitrator chosen according to the procedures found in the then current JAMS Employment Arbitrat

F.  **Preliminary Conference.** Within thirty (30) days after the selection of the arbitrator has been completed, EMC and th a conference call or meeting with the arbitrator to specify the issues to be resolved, and establish a hearing schedule.

G.  **Discovery and Conduct of Hearing.** The rules governing the procedures for discovery and the conduct of the arbitra Employment Arbitration Rules and Procedures.

H.  **Arbitration Decision.** Unless otherwise agreed by the parties in writing, the arbitration decision shall be issued within hearing. The decision shall be issued in writing, stating the factual and legal bases for the decision. The arbitrator sha would be available under the applicable law in a court proceeding, but shall not grant any remedy in excess of that pe establish or change EMC policies or procedures, or alter the at-will employment relationship.

I.  **Fees and Expenses.** Both EMC and the Employee shall be responsible for the expenses of their own counsel, exper EMC will, at the request of the Employee, pay the arbitrator's fees and EMC will pay any other fees required by applic

J.  **Governing Law/Severability.** Except when a statutory claim requires application of other law, the Legal Dispute shal Commonwealth of Massachusetts. If a court should determine that any provision of this Policy would render the Polic and direct the arbitration to proceed.

K.  **Confidentiality.** The arbitration will be private and confidential, and only the parties, their witnesses (when giving test party nor any arbitrator may disclose the existence, content or results of any arbitration hereunder: (i) without the prior an arbitral award, or (iii) as required by legal process, and then only after written notice is first given by the disclosing would have a reasonable opportunity to oppose such disclosure.



IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SHARON HALL,                          )
                                      )
          Plaintiff,                  )
                                      )
v.                                    )          Civil Action No. 08-1038 HHK
                                      )
EMC CORPORATION, et al.               )
                                      )
          Defendants.                 )
                                      )

# EXHIBIT C
### (MOTION TO DISMISS)

## Channel EMC
YOUR LINK TO EVERYTHING EMC

Home

EMC Web sites.......

My Profile   Manager Toolbox   EMC News   Policies   Benefits/Pay   Stock   Employment   Emplo

## **Legal Policies and Procedures**

### CORPORATE

**POLICY #:** LEGAL-115
**TITLE:** Arbitration Policy
**OWNER:** Office of the General Counsel
**LAST REVIEW:** December 2004

This Policy amends the prior arbitration policy and supersedes anything in the Key Employee Agreement which is not consist

Binding arbitration shall be the sole and exclusive remedy for resolving any individual Legal Dispute (defined below) initiated relating to an employee's employment by **EMC Corporation and/or its affiliates ("EMC" or the "Company"). "Legal Dispu** compensation, (ii) the termination of employment, (iii) discrimination, harassment or retaliation including under Title VII of the the Older Workers Benefits Protection Act, and any other federal, state, or local laws, (iv) severance, (v) reinstatement, or (vi) fees and costs relating to any of the above; _provided, however,_ that the Employee or the Company may file and pursue litigat permanent injunctive relief. Any damage claims related to the subject matter of such litigation will, however, be submitted to a

- **A. Written Notification of Dispute.** If the claim is initiated by an Employee, the Employee must notify the Office of the G Dispute ("Written Notification") within the applicable statute of limitations period or the Employee will be forever barred Company, the Company must similarly notify the Employee at his or her last known address within the applicable statu Written Notification must include (i) a description of the Legal Dispute; and (ii) the remedy sought, including any claim

- **B. Informal Resolution.** Both EMC and the Employee shall try in good faith to settle the Legal Dispute within thirty (30) Legal Dispute is not finally resolved within such thirty (30) days, the Legal Dispute shall be submitted to arbitration pro shall not bar an application for injunctive relief prior to the end of such 30-day period.

- **C. Initiation of Arbitration.** The Employee or EMC shall initiate arbitration proceedings by submitting a written request f Employee, as applicable ("Initiation of Arbitration"). Within thirty (30) days after the Initiation of Arbitration, EMC or the with the other.

- **D. Locale of Arbitration.** The arbitration will take place in the county which was the employee's principal place of emplo the employee involved is an exempt level employee and the primary action(s) complained of occurred in Massachuse Massachusetts, in which case the arbitration would take place in Massachusetts unless the parties agree to another l location.

- **E. Selection of Arbitrator.** The Legal Dispute shall be heard by one (1) arbitrator chosen by mutual agreement, and onl professional dispute resolution group will be eligible for consideration. However, if the parties fail to timely agree, or at heard by a neutral arbitrator chosen according to the procedures found in the then current JAMS Employment Arbitral

- **F. Preliminary Conference.** Within thirty (30) days after the selection of the arbitrator has been completed, EMC and th a conference call or meeting with the arbitrator to specify the issues to be resolved, and establish a hearing schedule.

- **G. Discovery and Conduct of Hearing.** The rules governing the procedures for discovery and the conduct of the arbitra Employment Arbitration Rules and Procedures.

- **H. Arbitration Decision.** Unless otherwise agreed by the parties in writing, the arbitration decision shall be issued withir hearing. The decision shall be issued in writing, stating the factual and legal bases for the decision. The arbitrator sha would be available under the applicable law in a court proceeding, but shall not grant any remedy in excess of that pe establish or change EMC policies or procedures, or alter the at-will employment relationship.

- **I. Fees and Expenses.** Both EMC and the Employee shall be responsible for the expenses of their own counsel, exper EMC will, at the request of the Employee, pay the arbitrator's fees and EMC will pay any other fees required by applic

- **J. Governing Law/Severability.** Except when a statutory claim requires application of other law, the Legal Dispute shal Commonwealth of Massachusetts. If a court should determine that any provision of this Policy would render the Policy and direct the arbitration to proceed.

- **K. Confidentiality.** The arbitration will be private and confidential, and only the parties, their witnesses (when giving test party nor any arbitrator may disclose the existence, content or results of any arbitration hereunder: (i) without the prior an arbitral award, or (iii) as required by legal process, and then only after written notice is first given by the disclosing would have a reasonable opportunity to oppose such disclosure.



**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **SHARON HALL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 08-1038 HHK** |
| | ) | |
| **EMC CORPORATION, et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**<u>PROPOSED ORDER</u>**

Upon consideration of EMC's Motion to Transfer this Case and Compel Plaintiff Arbitration, the Memorandum in Support thereof and any Opposition filed thereto, it is this ___ day of_____, 2008:

**ORDERED** that Defendants' Motion to Dismiss is GRANTED; and it is further

**ORDERED** that Plaintiff's Complaint is DISMISSED; or in the alternative it is further

**ORDERED** that this case be transferred to United States District Court for the District of Maryland, and it is further

**ORDERED** that Plaintiff is compelled to resolved the above-captioned action via arbitration in accordance with the parties agreement; and it is further

**ORDERED** that Plaintiff provide a more definite statement.

_____
Judge Henry H. Kennedy, Jr.
United States District Court for the
District of Columbia